NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
Assistant United States Attorney
Deputy Chief, International Narcotics,
 Money Laundering & Racketeering Section
MAX B. SHINER (Cal. Bar No. 187125)
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorney
International Narcotics, Money
 Laundering & Racketeering Section
        1400/1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: 213-894-5339/3308/6920
        Facsimile: 213-894-0142
        E-mail: shawn.nelson@usdoj.gov
                max.shiner@usdoj.gov
                keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-00173-GW-5 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR LUIS GARCIA |
| v. | |
| JOSE LANDA-RODRIGUEZ, et al., [#5-LUIS GARCIA] | |
| Defendants. | |

1.    This constitutes the plea agreement between LUIS GARCIA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and Six of the Indictment in <u>United States v. Jose Landa-Rodriguez, et al.</u>, CR No. 18-00173-GW, which charge defendant with conspiring to engage in racketeering activity, in violation of 18 U.S.C. § 1962(d), and conspiring to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h. Agree to, and not oppose, the imposition of the following condition of probation or supervised release:  Defendant shall submit to the search, with or without probable cause or

2

reasonable suspicion, of defendant's person, vehicle, residence, digital devices, including cell phones, and any other real or personal property under defendant's control.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One of the Indictment, that is, racketeer influenced and corrupt organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d), the following must be true: (1) an agreement existed between two or more persons employed by or associated with an enterprise that would have affected interstate or foreign commerce, to conduct or participate, either directly or indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity; (2) defendant joined or became a member of the agreement with knowledge of its purpose; and (3) defendant agreed that someone, not necessarily defendant, would commit at least two acts of racketeering activity in furtherance of the conspiracy.

3

5. An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. "Racketeering activity" includes: any act or threat involving murder, kidnapping, robbery, or extortion, which is chargeable under state law and punishable by imprisonment for more than one year; any offense involving dealing in a controlled substance in violation of 21 U.S.C. §§ 841 or 846; witness tampering in violation of 18 U.S.C. § 1312; retaliating against a witness in violation of 18 U.S.C. § 1513; money laundering in violation of 18 U.S.C. §§ 1956 or 1957; identity fraud in violation of 18 U.S.C. § 1028; and access device fraud in violation of 18 U.S.C. § 1029.

6. A "pattern of racketeering activity" is at least two acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering. To establish a pattern, the acts of racketeering activity must have a "nexus" to the enterprise and be related, i.e., criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated. The acts of racketeering activity themselves must either extend over a substantial period of time or they must pose a threat of continued criminal activity. Defendant admits that defendant agreed that defendant or a co-conspirator would commit two acts of racketeering activity and is, in fact, guilty of this offense as described in Count One of the Indictment.

7. Defendant understands that for defendant to be subject to the statutory maximum sentence for Count One set forth below, the

government must prove beyond a reasonable doubt that the racketeering conspiracy charged in Count One was based on: (a) willful, deliberate, and premeditated attempted murder, in violation of California Penal Code Sections 187, 189, and 664; and/or (b) conspiracy to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).

8.   Defendant understands that the elements of attempted murder, in violation of California Penal Code Sections 187 and 664, are as follows: (1) defendant took at least one direct but ineffective step toward killing another person; and (2) defendant intended to kill that person.   Furthermore, to commit a willful, deliberate, and premeditated attempted murder, defendant must have: (1) intended to kill when he acted; (2) carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill; and (3) decided to kill before completing the act of attempted murder.   Defendant admits that defendant is, in fact, guilty of willful, deliberate, and premeditated attempted murder as described in Count One, Paragraph 14 of the Indictment.

9.   Defendant understands that for defendant to be guilty of the offense charged in Count Six of the Indictment, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), the following must be true: (1) there was an agreement between two or more persons to distribute methamphetamine; and (2) defendant became a member of this conspiracy knowing of this object and intending to help accomplish it. Defendant admits that defendant is, in fact, guilty of this offense as described in Count Six of the Indictment.

10. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences for Count Six set forth below, the government must prove beyond a reasonable doubt that, over the life of the conspiracy to distribute controlled substances, defendant agreed that either he or his co-conspirators would distribute at least 50 grams of methamphetamine. Defendant admits that defendant, in fact, agreed and conspired to distribute at least 50 grams of methamphetamine.

<u>PENALTIES</u>

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1962(d), where the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment, such as either (a) willful deliberate, and premeditated attempted murder, in violation of California Penal Code Sections 187, 189, and 664, as alleged in Count One, Paragraph 14 of the Indictment, or (b) distribution of at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii), as alleged in Count One, Paragraph 11(b) of the Indictment, is: lifetime imprisonment; a five-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii), is: lifetime imprisonment; a lifetime period of supervised release; a fine of $10,000,000; and a mandatory special assessment of $100.

///

6

13.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C §§ 846, 841(a)(1), 841(b)(1)(A)(viii), is: ten years' imprisonment followed by a five-year period of supervised release and a mandatory special assessment of $100.

14.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: lifetime imprisonment; a lifetime period of supervised release; a fine of $10,250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.

15.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

16.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or

revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

17. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her convictions on her immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

18. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

<u>FACTUAL BASIS</u>

19. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant

1    and the USAO agree to the statement of facts provided below and agree

2    that this statement of facts is sufficient to support pleas of guilty

3    to the charges described in this agreement and to establish the

4    Sentencing Guidelines factors set forth in paragraph 21 below but is

5    not meant to be a complete recitation of all facts relevant to the

6    underlying criminal conduct or all facts known to either party that

7    relate to that conduct.

8           a.    Throughout the period described in the Indictment, the

9    Mexican Mafia LACJ Enterprise is and was a criminal enterprise

10   composed of a group of individuals associated for a common purpose of

11   engaging in a course of conduct, which included the trafficking of

12   methamphetamine, heroin, and other controlled substances, kidnapping,

13   robbery, extortion, money laundering, witness tampering and

14   retaliation, identity and access device fraud, and murder.  In that

15   regard, the Mexican Mafia LACJ Enterprise controlled the majority of

16   drug distribution among Hispanic inmates inside of the Los Angeles

17   County Jail ("LACJ"), and maintained control and authority over

18   Hispanic inmates in the LACJ through threats, intimidation, and acts

19   of violence against those inmates.

20          b.    The Mexican Mafia LACJ Enterprise committed, attempted

21   to commit, and threatened to commit acts of violence, including

22   assaults and murders, to protect and expand the enterprise's criminal

23   operation, and promoted a climate of fear among rival gang members,

24   potential witnesses to the enterprise's criminal conduct, Hispanic

25   gang members and inmates, and those who may cooperate with law

26   enforcement authorities both within and outside of LACJ.

27          c.    The Mexican Mafia LACJ Enterprise smuggled controlled

28   substances into LACJ for distribution, and used the threat of

violence to extort others engaged in the smuggling and distribution of controlled substances within LACJ, as a means to generate income. The Mexican Mafia LACJ Enterprise engaged in extortion of inmates by other means, including by the operation of a "kitty" within LACJ and by issuing fines for violations of Mexican Mafia rules, as other sources of generating income.  Further, the Mexican Mafia LACJ Enterprise used the threat of violence to profit from drug trafficking outside of LACJ by members of street gangs controlled by or affiliated with the Mexican Mafia, by requiring the payment by these gangs of a portion of their drug proceeds, which amounted to extortion of drug dealers.

d.   As a result of its drug trafficking conduct, throughout the period described in the above-captioned indictment, and as known to defendant, the Mexican Mafia LACJ Enterprise members and associates engaged in, and their activities in some way affected, commerce between one state and another state.

e.   Prior to February 2013 and continuing after May 2014, an agreement existed between two or more persons to participate, either directly or indirectly, in the affairs of the Mexican Mafia LACJ Enterprise through a pattern of racketeering activity. Beginning no later than February 2013 and continuing at least until May 2014, defendant LUIS GARCIA joined and became a member of that agreement, knowing of its purpose, knowing it was illegal, and intending to help accomplish it.  In that capacity, defendant agreed that a conspirator, whether defendant or someone else, would commit at least two acts of racketeering activity, in the form of distribution of narcotics, extortion, and attempted murder, which

///

1   acts had a relationship to one another and to the enterprise, and

2   posed a threat of continued criminal activity.

3         f.   From on or about November 2013 through on or about May

4   2014, defendant was a "facilitator," or high-level associate, of co-

5   defendant Jose Landa-Rodriguez, a Mexican Mafia member who controlled

6   the Mexican Mafia LACJ Enterprise during this time period and who had

7   the authority to conduct the affairs of the Mexican Mafia LACJ

8   Enterprise, including collecting extortion and drug proceeds and

9   enforcing discipline in areas of the Mexican Mafia LACJ Enterprise's

10  control by ordering assaults or other punishments of individuals

11  deemed under the authority of the Mexican Mafia LACJ Enterprise.

12        g.   Defendant conspired with members of the Mexican Mafia

13  LACJ Enterprise to distribute drugs within LACJ, and to control the

14  proceeds from the sale of drugs within LACJ.  Defendant himself would

15  direct others to smuggle drugs into LACJ for the benefit of himself

16  and co-defendant Jose Landa-Rodriguez.

17        h.   Defendant conspired with members of the Mexican Mafia

18  LACJ Enterprise to commit acts of violence within LACJ.  Defendant

19  himself would, to further the goals of the racketeering and drug

20  trafficking conspiracies, engage in acts of violence and direct

21  others to engage in violence inside of the Los Angeles County Jail to

22  enforce Mexican Mafia rules and discipline, including with the use of

23  dangerous weapons, to collect debts on behalf of the Mexican Mafia

24  LACJ Enterprise, including proceeds from the sale of controlled

25  substances, and to extort on behalf of the Mexican Mafia LACJ

26  Enterprise.

27  ///

28  ///

11

i.    In furtherance of the racketeering and drug trafficking conspiracies, defendant committed at least the following acts:

i.    On or prior to February 7, 2013, defendant received orders from unindicted co-conspirator 3 ("UICC-3") to kill victim M.A.  Defendant agreed to kill victim M.A. and obtained a jailhouse knife, or "shank" in LACJ from unindicted co-conspirator 39 ("UICC-39").  On February 7, 2013, defendant brought the shank with him as he entered the line for the showers in LACJ.  Defendant waited until victim M.A. came out for the showers and attempted to kill victim M.A. by stabbing victim M.A. repeatedly with the shank before disposing of the shank.  Victim M.A. suffered serious stab wounds.

ii.    On December 4, 2013, defendant, possessed in his cell within LACJ, jailhouse letters, or "kites," that directed the activities of the Mexican Mafia LACJ Enterprise inside LACJ, including drug trafficking and extortion, as well as a kite from defendant ordering a shot-caller to be removed from his position.

iii. On or before December 12, 2013, defendant ordered that O.A. be assaulted and replaced as a shot-caller for the Mexican Mafia LACJ Enterprise.

j.    From his position in the enterprise, defendant was well aware of the ongoing and regular drug trafficking being conducted by the Mexican Mafia LACJ Enterprise.  Defendant knew that members of the Mexican Mafia LACJ Enterprise regularly smuggled controlled substances including methamphetamine, heroin, marijuana, and cocaine into LACJ and obtained and possessed those controlled substances outside of LACJ to be smuggled into LACJ.  Thus, defendant agreed with other Mexican Mafia LACJ Enterprise members and

1  associates that, over the course of the conspiracy, co-conspirators

2  would distribute and possess with intent to distribute at least 4.5

3  kilograms of methamphetamine, as well as other drugs.

SENTENCING FACTORS

5      20.  Defendant understands that in determining defendant's

6  sentence the Court is required to calculate the applicable Sentencing

7  Guidelines range and to consider that range, possible departures

8  under the Sentencing Guidelines, and the other sentencing factors set

9  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

10  Sentencing Guidelines are advisory only, that defendant cannot have

11  any expectation of receiving a sentence within the calculated

12  Sentencing Guidelines range, and that after considering the

13  Sentencing Guidelines and the other § 3553(a) factors, the Court will

14  be free to exercise its discretion to impose any sentence it finds

15  appropriate between the mandatory minimum and up to the maximum set

16  by statute for the crimes of conviction.

17      21.  Defendant and the USAO agree to the following applicable

18  Sentencing Guidelines factors:

19  **Count One**

| GROUP 1 (Controlled Substances) | | |
|---|---|---|
| Base Offense Level: [4.5KG or more of actual methamphetamine] | 38 | [USSG § 2D1.1(c)(1)] |
| Dangerous Weapon Possessed | +2 | [USSG § 2D1.1(b)(1)] |
| Use/Directing Use of Violence | +2 | [USSG § 2D1.1(b)(2)] |
| Distribution of Controlled Substance in Correctional Facility | +2 | [USSG § 2D1.1(b)(4)] |

| GROUP 2 (Attempted Murder) | | |
|---|---|---|
| Base Offense Level:<br><br>Attempted Murder | 33 | [USSG § 2A2.1(a)(1)] |
| Victim Sustained Serious Bodily Injury | +2 | [USSG § 2A2.1(b)(1)(B)] |
| GROUP 3 (Extortion) | | |
| Base Offense Level | 18 | [USSG § 2B3.2(a)] |
| Offense Involved Threat of Death/Bodily Injury | +2 | [USSG § 2B3.2(b)(1)] |
| Dangerous Weapon Otherwise Used | +4 | [USSG § 2B3.2(b)(3)(A)(iv)] |
| Victim Sustained Serious Bodily Injury | +4 | [USSG § 2B3.2(b)(4)(B)] |

**Count Six**

| | | |
|---|---|---|
| Base Offense Level:<br><br>[4.5KG or more of actual methamphetamine] | 38 | [USSG § 2D1.1(c)(1)] |
| Dangerous Weapon Possessed | +2 | [USSG § 2D1.1(b)(1)] |
| Use/Directing Use of Violence | +2 | [USSG § 2D1.1(b)(2)] |
| Distribution of Controlled Substance in Correctional Facility | +2 | [USSG § 2D1.1(b)(4)] |
| Leadership Role in the Offense | +4 | USSG § 3B1.1(a) |

22.   Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and

1   the USAO will not be bound by the agreement to Sentencing Guideline

2   factors set forth above.

3       23.   Defendant understands that there is no agreement as to

4   defendant's criminal history or criminal history category.

5       24.   Defendant and the USAO reserve the right to argue for a

6   sentence outside the sentencing range established by the Sentencing

7   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

8   (a)(2), (a)(3), (a)(6), and (a)(7).

9               <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

10      25.   Defendant understands that by pleading guilty, defendant

11   gives up the following rights:

12         a.   The right to persist in a plea of not guilty.

13         b.   The right to a speedy and public trial by jury.

14         c.   The right to be represented by counsel – and if

15   necessary have the Court appoint counsel -- at trial.  Defendant

16   understands, however, that, defendant retains the right to be

17   represented by counsel – and if necessary have the Court appoint

18   counsel – at every other stage of the proceeding.

19         d.   The right to be presumed innocent and to have the

20   burden of proof placed on the government to prove defendant guilty

21   beyond a reasonable doubt.

22         e.   The right to confront and cross-examine witnesses

23   against defendant.

24         f.   The right to testify and to present evidence in

25   opposition to the charges, including the right to compel the

26   attendance of witnesses to testify.

27   ///

28   ///

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTIONS</u>

26.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

27.    Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the low-end of the applicable guideline range corresponding with a total offense level of 40 or lower and the criminal history category as found by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);

and the residency restriction and search condition agreed to in Paragraph 2.

28. The USAO agrees that, provided all portions of the sentence are at or above the applicable statutory minimum and at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

29. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare the agreement breached. All of defendant's obligations are material, a single breach of the agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares the agreement breached, and the Court finds such

a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under the agreement.

<u>COURT AND PROBATION & PRETRIAL SERVICES OFFICE NOT PARTIES</u>

32.  Defendant understands that the Court and the Probation & Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

33.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the Probation & Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of an appropriate sentence under the § 3553(a) factors, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 21 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the Probation & Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the factual basis and sentencing factors agreed to in this agreement.

34.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason,

withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

35.   Defendant understands that, except as set forth herein and in any contemporaneous agreement or addendum signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      36.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5  AGREED AND ACCEPTED

6  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7  CALIFORNIA

8  NICOLA T. HANNA
   United States Attorney

9

10                                              12/10/2020

11  SHAWN J. NELSON/MAX B. SHINER          Date
    Assistant United States Attorney

12

13

14  LUIS GARCÍA                           Dec 9. 2020
    Defendant                             Date

15

16

17                                        Dec. 9, 2020
    PATRICK MCLAUGHLIN                     Date
18  Attorney for Defendant
    LUIS GARCIA

19

20

21

22

23

24

25

26

27

28

1 <u>CERTIFICATION OF DEFENDANT</u>

2     I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement or in an agreement signed by all parties

14 or on the record in court.  No one has threatened or forced me in any

15 way to enter into this agreement.  I am satisfied with the

16 representation of my attorney in this matter, and I am pleading

17 guilty because I am guilty of the charges and wish to take advantage

18 of the promises set forth in this agreement, and not for any other

19 reason.

20

21 _____      Dec 9, 2020 _____
    LUIS GARCIA               Date

22     Defendant

23

24

25

26

27

28

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am LUIS GARCIA's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement or in an agreement signed by all parties or on the record in court; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____        _____
PATRICK MCLAUGHLIN                      Date    Dec. 9, 2020
Attorney for Defendant
LUIS GARCIA